UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| AUNDRE ROBINSON<br><br>   Plaintiff,<br>v.<br><br>SAVANNAH RIVER LOGISTICS<br><br>   Defendant. | )<br>)  JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DAMAGES**

COMES NOW, Aundre Robinson ("Plaintiff"), through undersigned counsel, and files this complaint for damages against Savannah River Logistics ("Defendant"), and for his Complaint shows the following:

**I.**     **Nature of Complaint**

1.

Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

2.

This action seeks declaratory relief, along with liquidated and actual damages, attorney's fees and costs for Defendant's violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et. seq.* ("Section 1981").

1

Jurisdiction and Venue

3.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.

Defendant does business in and is engaged in commerce in the State of Georgia. Venue is proper in this district pursuant to 29 U.S.C. § 1391(b) because a substantial part of the events and omissions that give rise to Plaintiff's claims occurred in this district.

5.

On November 28, 2022, Plaintiff received his Notice of Right to Sue from the EEOC.

6.

Therefore, Plaintiff has timely filed his complaint for damages within the 90-day period.

## II.   Parties and Facts

7.

Plaintiff is an African American male citizen of the United States of America and is subject to the jurisdiction of this Court.

8.

At all times relevant Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

9.

Defendant may be served with process at its regional corporate office at the following address: 141 Morgan Lakes Industrial Blvd., Pooler, GA, 31322, USA.

10.

Plaintiff became employed at the Defendant as a Truck Driver on or around July 8, 2021.

11.

Around the first week of March 2022, Plaintiff was told by Rachel and Brian during a call that he was to do a "late run".

12.

During Plaintiff's employment, he was part of the "non-force dispatch" meaning he could turn down loads, which was within his rights to determine.

13.

Plaintiff only turned down loads that he believed would place him over the 11 hours.

14.

The late run that Brian and Rachel had requested Plaintiff complete would have put him over the 11 hours in violation of DOT rules.

15.

A couple days later, Plaintiff was notified by dispatcher Ms. Shannon, that Brian was suspending Plaintiff to turn down the load. Plaintiff was then suspended for two (2) days.

16.

After receiving a notification of the write up from Shannon, Plaintiff went to the office to ask to speak with Larry to voice his concerns about being suspended for turning down a load.

17.

During the meeting in which Sherry and Rachel were present, Plaintiff told Larry that he did not want to believe the actions of the Defendant was because of his race, but looked as though it was.

18.

The Defendant had moved to a new facility during Plaintiff's employment. Plaintiff would typically go into the office to take the paperwork when the Defendant was in the old building.

19.

After the Defendant moved into the new building, in or around late-February or early March, it was announced that the Defendant no longer wanted truckers to come into the office.

20.

About a week later Plaintiff walked through the warehouse, and during this walk, Ms. Shannon again told him that the Defendant did not want any truckers in the office.

21.

A couple weeks later, Plaintiff came to the office window where he saw at least three or four Caucasian truckers in the office.

22.

In early April 2022, Brian offered Plaintiff a load to McDonough, Georgia which was less profitable than the load he regularly received.

23.

Plaintiff then inquired to Brian as to why he didn't receive the load he would typically receive, with Brian telling him the load had not yet been out of the port.

24.

The next day, Plaintiff went to the mailbox to submit the McDonough load he had just completed.

25.

Plaintiff then found the load in which he would typically receive to have already been completed by another trucker, a Caucasian, who is the husband/boyfriend of Shannon.

26.

On May 11, 2022, Plaintiff was notified by Brian that he had been assigned two loads to Buford, Georgia, that Thursday and Friday.

27.

Later that day, Shannon contacted Plaintiff to inform him that the first Buford load had not come out of the port, and he would be receiving another load from Brian in its place.

28.

Plaintiff was then contacted by Brian that same day informing Plaintiff that he would be doing the Sylvania load for Thursday.

29.

Plaintiff then explained to Brian that the Sylvania load was much less valuable than the Buford.

30.

Brian then told Plaintiff that he would pay him for the value of the Buford load even though he would be doing the Sylania load.

31.

On May 12, 2022, Brian contacted Plaintiff and told him that he would no longer be getting the Buford load for Friday but would instead be taking the Jacksonville load.

32.

This time, Brian did not tell Plaintiff that he would be getting the value of the Buford load for the Jacksonville load, meaning he would be paid much less.

5

33.

Plaintiff voiced his concerns to Brian about loads being constantly taken away from him.

34.

Plaintiff explained to Brian that he had good work ethic and could not think of any other reason as to why his loads were constantly changed than it being because of his race, considering the other actions that had recently taken place against Plaintiff.

35.

Brian denied that this was based on his race. Plaintiff then asked Brian to give him an explanation of how the situation was not racially motivated but received no answer from Brian.

36.

On May 13, 2022, Plaintiff came to the office because he was having issues with the truck he had planned to drive to Jacksonville.

37.

When Mr. Robertson came to the office, Brian was present in the office.

38.

Brian then told Plaintiff that "he wasn't a good fit" and that he would have to let him go.

39.

Plaintiff later received subsequently received a termination letter stating Plaintiff was "not a good fit as a sub-contractor for our organization."

40.

The termination letter did not mention any issues with Plaintiff's work performance.

## Count I
## RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

41.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

42.

Defendant subjected Plaintiff to discrimination on the basis of his race.

43.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race in violation of 42 U.S.C. section 1981.

44.

The effect of the conduct was to deprive Plaintiff of economic opportunites, and otherwise adversely effect Plaintiff's status as an employee, because of his race.

45.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected his psychological and physical well being.

46.

As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has been embarrassed, humiliated and has suffered damage to his emotional health, and has lost back pay and front pay.

47.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

48.

Defendant chose not to take appropriate remedial steps to prevent or correct the harassment.

49.

Defendant retaliated against Plaintiff when he engaged in the protected activity of complaining about said race discrimination also in violation of this Act.

50.

Defendant terminated Plaintiff for engaging in protected activity in violation of the Act.

51.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful retaliation against Plaintiff under the Act.

52.

As a direct, natural, proximate and foreseeable result of Defendant's retaliation, Plaintiff has suffered past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

53.

Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to federal law.

54.

Plaintiff, having been discriminated against by Defendant, has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

## Count II
## RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 (TITLE VII)

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

55.

Defendant subjected Plaintiff to discrimination on the basis of his race.

56.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race in violation of The Civil Rights Act of 1964 (Title VII).

57.

The effect of the conduct was to deprive Plaintiff of economic opportunites, and otherwise adversely effect Plaintiff's status as an employee, because of his race.

58.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected his psychological and physical well being.

59.

As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has been embarrassed, humiliated and has suffered damage to his emotional health, and has lost back pay and front pay.

60.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

61.

Defendant chose not to take appropriate remedial steps to prevent or correct the harassment.

62.

Defendant retaliated against Plaintiff when he engaged in the protected activity of complaining about said race discrimination also in violation of this Act.

63.

Defendant terminated Plaintiff for engaging in protected activity in violation of the Act.

64.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful retaliation against Plaintiff under the Act.

65.

As a direct, natural, proximate and foreseeable result of Defendant's retaliation, Plaintiff has suffered past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

66.

Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to federal law.

67.

Plaintiff, having been discriminated against by Defendant, has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

**WHEREFORE**, Plaintiff judgment as follows:

(a)     General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condemnation and approval of said acts;

(c)     Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)     Reasonable attorney's fees and expenses of litigation;

(e)     Trial by jury as to all issues;

(f)     Prejudgment interest at the rate allowed by law;

(g)     Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h)     Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant, from further unlawful conduct of the type described herein; and

(i)     All other relief to which he may be entitled.

Respectfully submitted the 12th day of December, 2022.

/s/ Jeremy Stephens
Jeremy Stephens, Esq.
Ga. Bar No.: 702063
**MORGAN & MORGAN, P.A.**
191 Peachtree Street, N.E., Suite 4200
Post Office Box 57007
Atlanta, Georgia 30343-1007
Tel:    (404) 965-1682
Email: *jstephens@forthepeople.com*